UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WATTS,<br>   Plaintiff,<br>  v.<br>CAL REMINGTON, et al.,<br>   Defendants. | Case No. 17-cv-01167-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 22 |

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention in the County of San Mateo's Maple Street Correctional Center ("MSCC"). Plaintiff alleges that he received incorrect medications on one occasion and suffered all of the side effects that were listed for the medications. Docket Nos. 1, 9. Plaintiff named as defendants Remington and Dr. Spencer. Defendants have filed a motion for summary judgment. Despite being reminded that he must oppose the motion, plaintiff has not filed an opposition or otherwise communicated with the court.[1] The court has still looked to the merits of the motion for summary judgment and for the reasons set forth below, the motion is granted.

**DISCUSSION**

**LEGAL STANDARDS**

**A. Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to

---

[1] Plaintiff has been released from custody, but has not updated the court with his current address. Docket No. 25.

judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

### B. Medical Care

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.[2] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.*

---

[2] It is not clear on the date of the incident if plaintiff was a pretrial detainee or a convicted prisoner. Regardless, the Ninth Circuit has determined that the appropriate standard for evaluating constitutional claims brought by pretrial detainees is the same one used to evaluate convicted prisoners' claims under the Eighth Amendment, even though pretrial detainees' claims arise under the Due Process Clause. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (8th Amendment guarantees provide minimum standard of care for pretrial detainees). "The requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons." *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc).

2

The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but also "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . . [Prisoner] would have had no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

### C. Individual Liability

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't. of Corr. & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *See Leer*,

3

844 F.2d at 633. To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" actions which violated his or her rights. *Leer*, 844 F.2d at 634.

"In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and nondiscriminatory explanations).

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). By contrast, supervisor liability is established by showing the supervisor's knowing acquiescence to free speech violations under the First Amendment and Equal Protection Clause, as well as to Eighth Amendment violations that are based upon deliberate indifference. *Id.* at 1074-75 & n.18.

**FACTS**

The following facts are undisputed except where indicated otherwise:

Plaintiff was an inmate at MSCC from May 13, 2016, to June 26, 2017. Motion for Summary Judgment ("MSJ"), Taylor Decl. ¶ 15. The alleged incident occurred on January 26, 2017, between plaintiff and an unidentified nurse. Complaint (Docket No. 1) at 4. Plaintiff alleges he told the unidentified nurse that the pills were not issued for him but the nurse said he should "just take them," which he did. *Id.* Plaintiff alleges that he was improperly given Lisinopril for high blood pressure and Metformin for diabetes and that he has neither high blood pressure nor diabetes. Docket No. 1 at 3. Plaintiff

4

submitted a declaration with his complaint where another prisoner stated that plaintiff received the wrong dosage of his medication. Docket No. 8 at 2.

Defendant Remington previously worked at MSCC as Director of Correctional Health Services, but left the position in January 2016, one year prior to the incident alleged in this case. MSJ, Morales Decl. ¶ 2. Defendant Dr. Spencer was the Medical Director for Correctional Health Services during the relevant time. MSJ, Spencer Decl. ¶ 1. Dr. Spencer did not interact with plaintiff on January 26, 2017. Complaint at 4. Dr. Spencer only became aware that plaintiff was potentially provided the wrong pills when plaintiff filed this federal lawsuit and named Dr. Spencer as a defendant. MSJ, Spencer Decl. ¶ 7.

Jail staff was first notified that plaintiff may have received the wrong medication on January 31, 2017, when plaintiff filed an inmate grievance form. MSJ, Taylor Decl. ¶ 16; Morales Decl. ¶ 13. The grievance stated that plaintiff received pills that were not his on January 26, 2017, and made him feel different. MSJ, Taylor Decl. ¶ 16. Other than the grievance, plaintiff did not notify medical staff regarding any adverse medical effects from the incident. *Id.* ¶ 17. An investigation into the grievance indicated that according to the medical sheet, plaintiff refused his medication on January 26, 2017, as well as on January 24, 25, 28 and 29, 2017. *Id.* ¶¶ 22-23. Plaintiff did take his prescription of Lisinopril from January 21 to January 24, on January 27 and from January 30 to February 4, 2017. *Id.* ¶ 24.

Plaintiff was evaluated by medical staff on January 31 and February 1, 2017. MSJ, Taylor Decl. ¶¶ 19-20. Plaintiff stated that he was alright but had coughed up blood and was experiencing chest pain, tooth pain and decreased hearing. *Id.* ¶ 20. An examination of plaintiff and review of his vitals demonstrated no acute distress. *Id.* Plaintiff was prescribed ear irrigation and referred to a dentist, and a chest x-ray was ordered. MSJ, Spencer Decl. ¶ 12. On February 8, 2017, a radiologist reviewed the chest x-ray and found it to be normal. *Id.* ¶ 13.

Plaintiff alleged that he was improperly given Lisinopril for high blood pressure and Metformin for diabetes. Docket No. 1 at 3. Plaintiff had been prescribed Lisinopril since November 2016, and the prescription was current on January 26, 2017. MSJ, Spencer Decl. ¶ 4. Plaintiff was not prescribed Metformin on or about that date. *Id.*

Plaintiff filed the federal complaint in this action on February 23, 2017. Docket No. 1. On February 28, 2017, plaintiff requested information regarding the side effects of Lisinopril and Metformin from medical staff. MSJ, Taylor Decl. ¶ 25. Medical staff provided plaintiff with the information. *Id.* On March 27, 2017, plaintiff submitted a filing with the court that included exhibits that listed the side effects of these drugs. Docket No. 9. Plaintiff stated he was experiencing all of the side effects, but provided no specific information. *Id.* The side effects listed include blurred vision, cloudy urine, confusion, decrease in urine, dizziness, sweating, abdominal pain, body aches, cough, decreased appetite, diarrhea, fast breathing, fever, general feeling of discomfort, lower back pain, muscle pain, painful urination, sleepiness, anxiety, cold sweats, coma, and cool pale skin. *Id.* Plaintiff never sought medical assistance from the jail medical facility regarding any of these side effects. MSJ, Taylor Decl. ¶ 25.

## ANALYSIS

It is undisputed that defendant Remington left his position at MSCC one year prior to the incident and several months before plaintiff arrived at the facility. It is also undisputed that defendant Dr. Spencer had no interaction with plaintiff on the day he allegedly received the incorrect medications, and Dr. Spencer was not involved with handing out medication to inmates. Defendants have met their burden in showing that they are entitled to judgment as a matter of law because they did not actually and proximately cause the alleged constitutional deprivation. Plaintiff has failed to present any evidence in response. Nor can plaintiff's conclusory allegations demonstrate supervisor liability pursuant to the legal standards set forth above.

Even assuming that these defendants were involved in the incident or plaintiff had named as defendant the nurse who provided the incorrect medications, there was no

constitutional violation, and thus defendants would be entitled to summary judgment. Assuming that the nurse provided plaintiff with Lisinopril and Metformin and told plaintiff to take them when he objected, he has not shown deliberate indifference. It is undisputed that plaintiff had been prescribed Lisinopril for several months and that it was prescribed on the day at issue. Even if plaintiff was given one dose of Metformin, which he had not been prescribed, he has not demonstrated a serious medical need to support a constitutional violation.

When plaintiff first told medical staff that he was alright, but had coughed up blood and was experiencing chest pain, tooth pain and decreased hearing, he was provided immediate care. He was prescribed ear irrigation, referred to a dentist, and ordered a chest x-ray, which was found to be normal by a radiologist.

While plaintiff filed the list of side effects and stated he was suffering from all of them, he never sought medical care for any of these side effects from the jail medical department. Nor has plaintiff addressed this failure to even attempt to seek medical care. Nor has he discussed the details regarding the side effects, other than stating he is suffering from all of them. Moreover, it is undisputed that plaintiff did not state he was suffering from any side effects until after he requested a list of the possible side effects from the jail medical department. "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007). For all these reasons, defendants are entitled to summary judgment.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can

have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and, even if there was a violation, it would not be clear to reasonable officials in these positions that a subordinate providing incorrect medication on one occasion would have violated the law. Defendants are entitled to qualified immunity.

## CONCLUSION

1. For the reasons set forth above, the motion for summary judgment (Docket No. 22) is **GRANTED**.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 30, 2017

PHYLLIS J. HAMILTON
United States District Judge

\\candoak.cand.circ9.dcn\data\users\PJHALL\_psp\2017\2017_01167_Watts_v_Remington_(PSP)\17-cv-01167-PJH-sj.docx

8